## McLaughlin vs. Job, imp.

REFORMATION OF MORTGAGE. *Rights of subsequent mortgagee.*

In an action to reform and foreclose a mortgage, this court (affirming the judgment of the circuit court) holds the evidence sufficient to show that one made defendant as subsequent mortgagee of the premises intended to be described in plaintiff's mortgage, took subject to plaintiff's equities, on the ground that he had notice thereof before his own mortgage (which was of the mortgagor's homestead) was executed by the mortgagor's wife, and while it was in his power to recover possession of chattels sold by him to the mortgagor, payment of the price of which was secured by his mortgage.

APPEAL from the Circuit Court for *Portage* County.

Foreclosure of a mortgage executed by the defendants John E. Wilson and wife to the plaintiff, upon a certain quarter of the southeast quarter of sec. 35 of a certain town in said county, dated April 9, 1874, and recorded September 30, 1874. The description, as actually found in the mortgage, is of the *southeast* quarter of said southeast quarter; but the complaint alleges that this description was inserted by mistake, and that the mortgage was intended to cover the *southwest* quarter of said southeast quarter; and it prays that the mortgage be reformed. It is further alleged that on the 26th of September, 1874, Wilson and wife conveyed the southwest quarter of said

southeast quarter to the defendant Seneca Bentley, subject, by the terms of the deed, to the mortgage to the plaintiff, which Bentley agreed to pay; and that this deed was recorded October 20, 1875; that afterwards, Bentley and wife, for a valuable consideration, executed a mortgage on said last-described quarter-quarter section to the defendant *Job*, which was dated April 15, 1875, and recorded July 3, 1875; and that *Job* took said mortgage with full knowledge of plaintiff's mortgage and of the fact that it was intended to cover the same land.

*Job* answered denying that when he took his mortgage he had any knowledge of plaintiff's mortgage, or any reason to believe that plaintiff had or claimed a lien upon the land. The other defendants did not appear. The undisputed evidence showed that Bentley and his family were residing on the premises when the mortgage to *Job* was given; that said mortgage was executed by Mr. Bentley on the day of its date, April 15, 1875, but was not executed by Mrs. Bentley until some time in May;* and that, a short time before Mrs. Bentley executed it, *Job* was informed by one Shumway that plaintiff had a mortgage of the same land. It also appeared that the mortgage to *Job* was given to secure payment of the price of a span of horses sold and delivered by *Job* to Bentley, apparently either on or before April 15, 1875. The general effect of the evidence in other respects, as viewed by this court, will sufficiently appear from the opinion.

The court found the facts as alleged in the complaint, and rendered judgment as therein demanded; from which the defendant *Job* appealed.

The cause was submitted on the brief of *D. Lloyd Jones* for the appellant, and that of *James O. Raymond* for the respondent.

For the appellant it was contended, that a vague rumor of a prior incumbrance, received from a stranger in a casual

---

* By sec. 24, ch. 134, R. S., a mortgage or other alienation of the homestead by a married man is not valid without the signature of the wife.

conversation, was not enough to charge the appellant with notice (*Lamont v. Stimson*, 5 Wis., 443; 2 Sugden on Vend., Perkins' ed., 755); that the notice must be so clearly proved as to make it fraudulent in the appellant to take and record a conveyance in prejudice of the plaintiff's title, and a mere suspicion of notice, however strong, is not sufficient (1 Story's Eq. Jur., § 398; 4 Mass., 637; 14 id., 301; 3 Pick., 149; 15 N. Y., 364; 2 Atk., 275; 3 Ves.; 478; *Le Neve v. Le Neve*, 2 L. C. in Eq., 127, and notes; *Bassett v. Nosworthy*, id., 52; Newland on Con., 510; 4 Kent's Com., 172; 24 Wis., 654; 32 id., 245); that plaintiff's entire proofs consisted of evidence of admissions, which is the weakest kind of evidence known to the law, and is always to be received with the greatest caution (8 Wis., 1; 13 id., 256; 20 Beav., 284); and that even if defendant had information sufficient to put him on inquiry, the question would still be, not whether he might have obtained knowledge of plaintiff's equities by peculiar caution, but whether his not obtaining it was an act of gross or culpable negligence (13 Ves., 120; 15 N. Y., 354; 46 id., 384). Counsel further contended that there was no evidence given on the trial tending to show that the appellant had any notice of the plaintiff's mortgage *prior to his parting with the consideration* for his own mortgage, and that proof of notice subsequent to that time was immaterial. 1 Story's Eq. Jur., § 400 b.

For the respondent it was argued, 1. That in order to charge the appellant with notice, it was only necessary to show such notice as would naturally put him upon inquiry (*Hoppin v. Doty*, 25 Wis., 573; *Hamlin v. Wright*, 26 id., 50; *Fallass v. Pierce*, 30 id., 468–9); and that as plaintiff's mortgage was not recorded, the appellant could not ·have been misled by the wrong description in it. 2. That where a mortgage is taken as security for an *antecedent debt*, notice at any time prior to the *taking of the security* is sufficient (4 Kent's Com., 172); that in this case it does not appear

whether the mortgage debt due from Bentley to the appellant accrued at the date of the mortgage or at some previous time; that if it accrued at the date of the mortgage, the appellant appeared from the evidence to have had notice prior thereto; and that there was a clear preponderance of evidence in favor of such notice prior to the actual delivery of the mortgage completely executed.

COLE, J.  The evidence is uncontradicted that there was a mistake in the mortgage executed by Wilson and wife to the plaintiff; and the sole question in the case is, whether the defendant *Job* had notice, when he took his mortgage from Bentley, of the existence of that mortgage, and that it was intended by the parties thereto to be upon the southwest quarter of the southeast quarter of section thirty-five.  The learned circuit court found, in effect, that *Job* had notice of the first-named mortgage and of the mistake therein, when he took his mortgage from Bentley, and therefore that he is not an innocent subsequent incumbrancer.  It seems to us that the decided weight of testimony sustains that view.  We do not propose to discuss the evidence; for to do so would subserve no useful purpose.  But it is sufficient to say that according to the testimony of several witnesses, *Job* admitted that he knew of the prior incumbrance when he took his mortgage. It is true, *Job* denies that he made any such admissions, and he testified that he had no knowledge nor reason to believe that *McLaughlin* had a mortgage on that tract of land.  But still, if the testimony of a number of apparently truthful and disinterested witnesses is to be believed, he did have notice of the *McLaughlin* mortgage before his own was executed and delivered.  The testimony of the witness Shumway, to say nothing of the other evidence which tends to establish the same fact, is direct and positive, that he had a conversation with *Job* before Mrs. Bentley had signed his mortgage, in which conversation he informed *Job* that *McLaughlin* had a

mortgage on the southwest quarter of the southeast quarter of section thirty-five. The defendant *Job* substantially admits the correctness of Shumway's testimony as to this conversation. It appears that the consideration for the Bentley mortgage was a span of horses. It was in the power of *Job* to have recovered his property when he learned of the existence of the *McLaughlin* mortgage, if he deemed the forty insufficient security for the payment of both mortgages. It seems to us that notice of the *McLaughlin* mortgage was so clearly and directly brought home to *Job* that he cannot claim to have taken his mortgage in good faith, so as to be entitled to protection. We therefore think the judgment of the circuit court was correct, and must be affirmed.

*By the Court.* — Judgment affirmed.